**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**MARK R. FERRAN et al.,**

                **Plaintiffs,**

        **v.**

**CITY OF ALBANY et al.,**

                **Defendants.**
_____

**1:14-cv-1362**
**(GLS/ATB)**

**APPEARANCES:**           **OF COUNSEL:**

**FOR THE PLAINTIFFS:**
Mark R. Ferran
Pro Se
36 Winnie Street
Albany, NY 12208

Nadia Ferran
Pro Se
3 Crieff Lane
New City, NY 10956

**FOR THE DEFENDANTS:**
*City of Albany*, Hon. Gerald D. Jennings,
*Joseph J. Toomey, Loren LaJoy,*
*Vincent Dibiase, Valerie Y. Scott,*
*John J. Reilly, and Bradford Burns*    STEPHEN J. REHFUSS,
The Rehfuss Law Firm, P.C.    ESQ.
40 British American Blvd.    ABIGAIL W. REHFUSS,
Latham, NY 12110    ESQ.

*Joseph M. Lanaro, Felicia Russell,*
*and Chazen Companies*
Tromello & Fishman    CHRISTINE D. HANLON,

1187 Troy-Schenectady Road                    ESQ.
Latham, NY 12210

**Gary L. Sharpe**
**Senior District Judge**

### MEMORANDUM-DECISION AND ORDER

## I. Introduction

Plaintiffs, mother and son, Nadia Ferran (hereinafter, "N. Ferran")

and Mark Ferran (hereinafter "M. Ferran") commenced this action *pro se*

against forty-eight defendants alleging over forty constitutional and state

law claims in connection with the demolition of a property at 54 Clinton

Avenue in Albany, New York.  (*See generally* Am. Compl., Dkt. No. 12.)

Certain claims have since been dismissed, and certain defendants have

since been terminated, (Dkt. No. 73), leaving City of Albany, Hon. Gerald

D. Jennings, Joseph J. Toomey, Loren LaJoy, Vincent Dibiase, Valerie Y.

Scott, John J. Reilly, and Bradford D. Burns (collectively, "City

defendants"),[1] and The Chazen Companies, Joseph Lanaro, and Felicia

_____

[1] Former defendant Robert C. Forezzi, Sr., who was part of the collective City defendants was dismissed from the case, due to a notice of death filed by his counsel, and a failure by plaintiffs to timely substitute Forezzi with his successor or representative.  (Dkt. Nos. 112, 113, 118.)

Russell (collectively "Chazen defendants") as the only defendants.[2]

Pending are unopposed motions for summary judgment by the remaining defendants. (Dkt. Nos. 139, 140.)[3] For the reasons that follow, the motions are granted.

## II. __Background__

### A. __Facts__[4]

N. Ferran was the owner of the subject property. (City Defs.' Statement of Material Facts (SMF) ¶ 1, Dkt. No. 140, Attach. 2; Dkt. No. 140, Attach. 7 at 6:19-7:3.) The subject property was a rowhouse that directly abutted a similar rowhouse on one side and shared a common wall with a different rowhouse on the other side. (City Defs.' SMF ¶ 3; Dkt. No. 140, Attachs. 5, 6 at 17:22-18:13.) At the time of the incidents giving rise

---

[2] John Does 6-8 (personnel of the City of Albany Department of Fire and Emergency Services and the Division of Building and Codes), and John Does 11-20 (individuals part of City defendants) have yet to be identified by plaintiffs and are hereby dismissed from this action. *See Sachs v. Cantwell*, No. 10 Civ. 1663, 2012 WL 3822220, at *10 (S.D.N.Y. Sept. 4, 2012) ("The Court dismisses John Doe [Defendants] from the case without prejudice for failure to prosecute, as Plaintiff did not identify the John Doe Defendants by the end of discovery.").

[3] Notably, throughout this Order, N. Ferran and M. Ferran are referred to collectively as "plaintiffs," but in accordance with the court's order on the defendants' motions to dismiss, (Dkt. No. 73), other than the conversion claim, M. Ferran currently only has claims arising from his personal property, and not the subject property, (*Id.* at 18-19). Only N. Ferran has claims remaining that arise from the subject property. (*Id.*)

[4] Pursuant to N.D.N.Y. L.R. 7.1(a)(3), the court deems admitted defendants' statements of material facts, which are properly supported and unopposed.

to this litigation, the building had been vacant since the 1980s, it did not have any active utilities since the 1990s, and the building had been cited for a number of code violations.  (City Defs.' SMF ¶¶ 5-7; Dkt. No. 140, Attachs. 4, 6 at 14:5-17:4.)

On the morning of November 9, 2011, the subject property caught fire.  (City Defs.' SMF ¶ 2; Dkt. No. 140, Attachs. 4, 5; Chazen Defs.' SMF ¶ 1, Dkt. No. 139, Attach. 9.)  After the fire was extinguished, the property was inspected by City of Albany Fire Department's Deputy Fire Chief Joseph Toomey and the Chazen Companies' Joseph Lanaro, an independent civil engineer hired by the City.  (City Defs.' SMF ¶¶ 9-14; Dkt. No. 140, Attach. 4.)  Toomey observed that the subject property suffered severe damage, that the roof was deformed, and that the property was in imminent danger of collapsing.  (City Defs.' SMF ¶ 12; Dkt. No. 140, Attach. 4.)  Lanaro opined that the damage to the subject property left it too unsafe for an attempt at restoring or salvaging it, and recommended that the property be immediately demolished.  (City Defs.' SMF ¶ 15; Dkt. No. 140, Attach. 5.)  Chazen provided a written report and photographs to the City to support this recommendation.  (Chazen Defs.' SMF ¶ 5; Dkt. No. 139, Attachs. 2-4.)

Based on Lanaro's opinion, and Toomey's own observations, Toomey filed an emergency order to demolish the subject property pursuant to the Code of the City of Albany, which was issued on November 9, 2011. (City Defs.' SMF ¶ 16; Dkt. No. 140, Attachs. 4, 5.) Toomey issued a notice to N. Ferran advising her that the property was in imminent danger of collapse and needed to be demolished. (City Defs.' SMF ¶ 17; Dkt. No. 140, Attach. 4.) Shortly thereafter, the City hired M. Cristo Inc. to perform the demolition. (City Defs.' SMF ¶ 22; Dkt. No. 140, Attach. 4.) The subject property was demolished from November 9, 2011 to November 11, 2011. (City Defs.' SMF ¶ 18; Dkt. No. 140, Attach. 4.) Although N. Ferran owned the subject property, both N. Ferran and M. Ferran had personal property inside of it. (Chazen Defs.' SMF ¶ 2.) Following the demolition, plaintiffs commenced a proceeding pursuant to Article 78 of New York's Civil Practice Law and Rules in New York State court challenging the demolition of the subject property on numerous constitutional and state law grounds. (Am. Compl. ¶ 381; Dkt. No. 21, Attach. 3 at 2-41.)

**B.** **Procedural History**

Plaintiffs filed their complaint, (Compl., Dkt. No. 1), on November 10,

2014, and the operative, amended complaint, (Am. Compl.), on May 6, 2015.  Motions to dismiss were filed by City defendants, (Dkt. No. 21), Chazen defendants, (Dkt. No. 26), former defendant Historic Albany Foundation, Inc. ("HAF"), (Dkt. No. 33), Michael P. Cristo Jr., Michael P. Cristo, and M. Cristo Inc. (collectively "Cristo former defendants"), (Dkt. No. 54), and Eugene Devine, Elizabeth A. Garry, John A. Lahtinen, Richard M. Platkin, Robert S. Rose, and Leslie E. Stein (collectively "state former defendants"), (Dkt. No. 62).

The court granted in part and denied in part these motions to dismiss.  (*See generally* Dkt. No. 73.)  First, because M. Ferran did not have a possessory interest in the subject property, the court found that he only has standing as to claims arising from the destruction of his own personal property and does not have standing as to claims arising from the demolition of the subject property.  (*Id.* at 18-19.)[5]  Next, the court terminated HAF, Cristo former defendants (including John Does 22 through 25) , state former defendants, and former defendant Vacant Building Initiative Project Team (including John Does 1 through 4).  (*Id.* at 28.)

_____

[5]  The court clarified upon reconsideration that N. Ferran validly assigned her claim for conversion of her personal property to M. Ferran.  (Dkt. No. 101 at 3-4.)

6

Finally, the court narrowed the claims against Chazen defendants to a 42 U.S.C. § 1983 conspiracy claim, and against City defendants to (1) a Fourteenth Amendment procedural due process claim; (2) a 42 U.S.C. § 1983 conspiracy claim; and (3) a New York State law conversion claim. (*See generally id.*)  The court dismissed all other claims under Federal Rule of Civil Procedure 8(a) due to lack of adequate notice for defendants. (*Id.* at 26-27.)

Discovery was completed over the course of nearly two years.  (Dkt. Nos. 96, 138.)  Motions for summary judgment were then filed by Chazen defendants, (Dkt. No. 139), and City defendants, (Dkt. No. 140).  Despite being provided with notice by the court that explained the consequences of failing to respond to the pending motions, (Dkt. No. 141),[6] and requesting and being granted a forty-five-day extension of time to do so, (Dkt. Nos. 142, 143), plaintiffs have filed no response to the motions, and have not notified the court of their intention not to respond pursuant to the court's

---

[6]  The court's notice specified, among other things, that (1) "[i]f [plaintiffs' did] not submit a proper response to the defendants' statement of material facts, the Court may deem [them] to have admitted the defendants' factual statements," (2) "[i]f [they did] not submit copies of record evidence in support of [their] denials, the Court may deem defendants' factual statements to be true," and (3) "[i]f [they did] not submit a proper response memorandum of law, the Court may deem [them] to have conceded the defendants' arguments."  (Dkt. No. 141, Attach. 1.)

notice, (Dkt. No. 141).

### III.  <u>Standards of Review</u>

The standard of review pursuant to Rule 56 of the Federal Rules of Civil Procedure is well established and will not be repeated here.  For a full discussion of the standard, the court refers the parties to its decision in *Wagner v. Swarts*, 827 F. Supp. 2d 85, 92 (N.D.N.Y. 2011), *aff'd sub nom. Wagner v. Sprague*, 489 F. App'x 500 (2d Cir. 2012).

As noted above, plaintiffs did not oppose the pending motions for summary judgment.  But a party's failure to oppose a motion for summary judgment does not mean that the motion is to be granted automatically. *See* Fed R. Civ. P. 56(e).  Indeed, an unopposed motion for summary judgment may be granted "only if the facts as to which there is no genuine dispute show that the moving party is entitled to judgment as a matter of law."  *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996) (internal quotation marks and citations omitted).

However, "[w]here a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein, the non-moving party's failure to file or serve any papers as this Rule requires shall be deemed as consent

8

to the granting . . . of the motion . . . unless good cause is shown."

N.D.N.Y. L.R. 7.1(b)(3).  In deciding on an unopposed motion for summary

judgment, facts in the movant's statement of material facts will be accepted

as true to the extent (1) they are supported by evidence in the record, and

(2) the nonmovant, if proceeding *pro se*, has been specifically advised of

the possible consequences of failing to respond to the motion.  *See VT*

*Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir.

2004); *Champion*, 76 F.3d at 486.

## IV.  Discussion

Because defendants' statements of material facts are supported by

evidence in the record, (Dkt. No. 139, Attach. 9; Dkt. No. 140, Attach. 2),

and plaintiffs were specifically advised of the possible consequences of

failing to respond to the motions, (Dkt. No. 141, Attach. 1), the facts in the

defendants' statements of material facts are deemed true.

## A.    Procedural Due Process

With respect to plaintiffs' procedural due process claim, City defendants argue that they are entitled to summary judgment because the existence of an emergency condition justified the swift demolition of the subject property, and plaintiffs were afforded sufficient post-deprivation process.  (Dkt. No. 140, Attach. 1 at 5-8.)

Analysis of a procedural due process claim is composed of two prongs.  *See Narumanchi v. Bd. of Trs. of Conn. State Univ.*, 850 F.2d 70, 72 (2d Cir.1988).  First, the court must discern "whether the plaintiff has a property or liberty interest protected by the Constitution."  *Id.* (citation omitted).  If such an interest exists, "[the] court must then consider whether the government deprived the plaintiff of that interest without due process." *Id.*  Thus, under this second step of the analysis, the court must ask "what process was due to the plaintiff, and . . . whether that constitutional minimum was provided in the case under review."  *Id.* (citation omitted).

Under certain circumstances, however, the "lack of such pre-deprivation process will not offend the constitutional guarantee of due process, provided there is sufficient post-deprivation process."  *Spinelli v. City of New York*, 579 F.3d 160, 170 (2d Cir. 2009) (alterations and internal

quotation marks, and citation omitted).  Specifically, the "necessity of quick action by the [municipality] . . . when coupled with the availability of some meaningful means by which to assess the propriety of the [municipality]'s action at some time after the initial taking, can satisfy the requirements of procedural due process."  *Id.* (alterations, internal quotation marks, and citation omitted).  Thus, "where there is competent evidence allowing [a municipal] official to reasonably believe that an emergency does in fact exist . . . the discretionary invocation of an emergency procedure results in a constitutional violation only where such invocation is arbitrary or amounts to an abuse of discretion."  *WWBITV, Inc. v. Village of Rouses Point*, 589 F.3d 46, 51 (2d Cir. 2009) (citation omitted).

Here, there appears to be no dispute that N. Ferran had a protected interest in the subject property, and that she did not receive adequate pre-deprivation process before its demolition.  (Dkt. No. 140, Attach. 1 at 5-8.) Instead, City defendants rely on the emergency exception and argue that it was entitled to demolish the subject property because the dangerous condition in which the property had remained after the fire posed an emergency threat to the public.  (*Id.*)  Therefore, "the Court's inquiry is twofold: (1) whether there was an emergency that required immediate

action; and (2) whether adequate post-deprivation remedies were available." *Seedan Real Estate Holding, LLC v. Leary*, No. 3:16-cv-00595, 2018 WL 6830707, at *10 (N.D.N.Y. Dec. 28, 2018) (citations omitted).

### 1. Emergency Situation

As relevant here, a public official's decision to invoke an emergency demolition procedure without a post-deprivation hearing is afforded "some deference." *Catanzaro*, 188 F.3d 56, 62 (2d Cir. 1999). Still, the official's discretion in making that decision is not limitless, and "the due process guarantee is offended" and liability attaches "when an emergency procedure is invoked in an abusive and arbitrary manner." *Id.* (citation omitted). In determining whether a public official has abused his constitutionally afforded discretion to invoke the emergency doctrine, the central inquiry is whether "there was competent evidence allowing the official to reasonably believe that an emergency [did] in fact exist, or that affording predeprivation process would be otherwise impractical." *Id.* at 63.

The subject property was a rowhouse that directly abutted a similar row house to its one side, and shared a wall with a different rowhouse to the other side. (City Defs.' SMF ¶ 3; Dkt. No. 140, Attachs. 5, 6 at 17:22-18:13.) When Toomey, who was a certified fire investigator and code

enforcement officer responded to the subject property, he determined that the condition of the property posed an immediate threat to the health and safety of the public.  (City Defs.' SMF ¶¶ 9-12; Dkt. No. 140, Attach. 4.)  Accordingly, he ordered an inspection of the property.  (City Defs.' SMF ¶ 13.)

Lanaro, a civil engineer contracted by the City to inspect the property, determined that the subject property was structurally unsafe and should be demolished.  (Dkt No. 139, Attach. 4.; City Defs.' SMF ¶¶ 13-16; Dkt. No. 140, Attachs. 4-5.)  Specifically, Lanaro observed and documented, among other things, that the roof of the subject property was significantly destroyed by fire, that the collapse of the roof impacted the floor systems and the walls of the property, and that the front wall was "noticeably out of square along the roof line and fenestration line at the floor below."  (Dkt. No. 139, Attach. 4 at 3.)  It was only until after the severe damage to the property had been observed and documented, that the emergency procedures to demolish the subject property were commenced.  (Dkt. No. 139, Attach. 4; City Defs.' SMF ¶¶ 16-17, Dkt. No. 140, Attach. 4.)

Lanaro is an experienced and apparently well-trained engineer.  (Dkt.

No. 139, Attach. 3.)  Indeed, he has been a distinguished engineer in the Albany, New York area for more than thirty years and is a licensed project engineer in more than twenty-five states.  (*Id.*)  Accordingly, Lanaro's recommendation, in conjunction with Toomey's own observations of the structural damage sustained by the subject property, constitutes competent evidence allowing Toomey and City defendants at large to reasonably believe that an emergency existed and that affording pre-deprivation process would be impractical.  *See WWBITV*, 589 F.3d at 51-52; *Catanzaro*, 188 F.3d at 63-64; *Seedan*, 2018 WL 6830707 at *11.

In their complaint, plaintiffs allege—without adequate factual support—that the fire damage was a mere pretext to support the subject property's demolition, that the subject property did not need to be demolished, and that Lanaro's report was manufactured and false.  (Am. Compl. ¶¶ 451, 459, 468, 476.)  Consistent with their failure to respond to the pending motions, plaintiffs did not provide the court with any support for these allegations or any other facts to suggest that an emergency did not exist or that it would not have been impractical for pre-deprivation process. Thus, based on the undisputed facts, there is no genuine issue that an emergency situation existed and that immediate action was warranted, and

no jury could find that City defendants abused their discretion or acted arbitrarily with respect to this decision.

### 2. *Post-Deprivation Process*

"[I]t is well-settled that an Article 78 proceeding is an adequate post-deprivation remedy for the emergency demolition of property." *Seedan*, 2018 WL 6830707, at *11 (citation omitted); *Grillo v. N.Y.C. Transit Auth.*, 291 F.3d 231, 234 (2d Cir. 2002) ("[A]n Article 78 proceeding is a perfectly adequate postdeprivation remedy.").

Shortly after the demolition, plaintiffs filed a notice of claim with the City and commenced a proceeding pursuant to Article 78 of New York's Civil Practice Law and Rules in New York State court challenging the demolition of the subject property on numerous state law and constitutional grounds. (Am. Compl. ¶ 381; Dkt. No. 21, Attach. 3 at 2-41.) Accordingly, summary judgment is granted as to plaintiffs' Fourteenth Amendment procedural due process claim, and this claim against City defendants is dismissed.

## B. <u>Conspiracy</u>

With respect to plaintiffs' 42 U.S.C. § 1983 conspiracy claim, City defendants and Chazen defendants argue that they are entitled to

15

summary judgment because, aside from unsupported allegations in plaintiffs' complaint, there is no evidence to suggest that they entered into an agreement to violate plaintiffs' constitutional rights.  (Dkt. No. 139, Attach. 8 at 2-5; Dkt. No. 140, Attach 1 at 9-10.)  Chazen defendants additionally argue that they are entitled to summary judgment as to this claim because Lanaro was independent and his decision was based on his own observations in conjunction with his education and experience, and because Chazen defendants had no stake in whether the subject property was demolished or not.  (Dkt. No. 139, Attach. 8 at 2-5.)

To sustain a conspiracy claim under 42 U.S.C. § 1983, plaintiffs must prove the existence of "(1) an agreement . . . between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Morris v. Martin*, No. 5:16-cv-601, 2019 WL 5457767, at *5 (N.D.N.Y. Oct. 23, 2019) (quoting *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999)). Put differently, "a plaintiff must demonstrate that a defendant acted in a wilful manner, culminating in an agreement, understanding or 'meeting of the minds,' that violated the plaintiff's rights . . . secured by the Constitution or federal courts. *Malsh v. Austin*, 901 F. Supp. 757, 763 (S.D.N.Y. 1995)

(internal quotation marks and citations omitted).  Accordingly, in order to maintain their conspiracy claim, plaintiffs must prove an actual constitutional violation.  *See Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995) (citation omitted).

Plaintiffs' constitutional claims did not withstand the defendants' motions to dismiss, (Dkt. No. 73), or motions for summary judgment, (*see supra*).  And without a constitutional violation claim, plaintiffs are unable to maintain their Section 1983 conspiracy claim.  *See AYDM Associates, LLC v. Town of Pamelia*, 205 F. Supp. 3d 252, 274 (N.D.N.Y. 2016), *aff'd*, 692 F. App'x 78 (2d Cir. 2017).

In any event, even if plaintiffs did have a surviving constitutional violation claim, there is no evidence upon which a jury could conclude that there was an agreement or "meeting of the minds" to deprive plaintiffs of their constitutional rights.  City defendants hired Chazen defendants to inspect the subject property and provide a recommendation on whether the property needed to be demolished.  Based on his experience, the condition of the property caused Lanaro to recommend that it be demolished.  (City Defs.' SMF ¶ 15; Dkt. No. 140, Attach. 5.)

Although plaintiff states that City defendants and Chazen defendants

17

conspired to violate his constitutional rights, and that they "manufactured" a reason to demolish the subject property, there is absolutely no evidence in the record to support his allegations. And conclusory and unsupported allegations of a conspiracy are insufficient to defeat summary judgment. *See Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1988) (explaining that "conclusory allegations" or "unsubstantiated speculation" will not defeat summary judgment on a Section 1983 conspiracy claim (citations omitted)); *Hill v. Melvin*, No. 05 Civ. 6645, 2006 WL 1749520, at *12 (N.D.N.Y. Jun. 27, 2006) ("Conclusory allegations of conspiracy are insufficient to survive summary judgment on a claim of conspiracy under § 1983." (internal quotation marks and citations omitted)); *Myers v. County of Nassau*, 825 F. Supp. 2d 359, 368 (E.D.N.Y. 2011) ("Plaintiff's bare allegations of a scheme to fabricate evidence might be sufficient to defeat a motion to dismiss. Where, as here, however, a plaintiff is faced with a properly supported motion for summary judgment, he may not rest upon his pleadings. Instead, he must come forward with admissible evidence that would allow a reasonable jury to find in his favor.").

Accordingly, summary judgment is granted as to plaintiffs' 42 U.S.C. § 1983 conspiracy claim, and this claim against City defendants and

18

Chazen defendants is dismissed.

**C.    <u>Conversion</u>**

With respect to plaintiffs' state law conversion claim, City defendants argue that they are entitled to summary judgment because it was Cristo former defendants, and not City defendants, who performed the demolition and who plaintiffs allege were responsible for destroying their personal property, and because plaintiffs have not supported their allegations in the complaint that the personal property was destroyed by the demolition. (Dkt. No. 140, Attach. 1 at 10-11.)

Under New York law, "[a] conversion takes place when someone, intentionally and without authority, assumes or exercises control over personal property belonging to someone else, interfering with that person's right of possession." *Colavito v. N.Y. Organ Donor Network, Inc.*, 8 N.Y.3d 43, 49-50 (2006). The elements of the tort, therefore, are that: (1) the plaintiff has a "possessory right or interest in the property"; and (2) the defendant takes dominion over the property or interferes with it "in derogation of the plaintiff's rights." *Id.* at 50.

Plaintiffs' cause of action for conversion was brought against City defendants. The heading in plaintiffs' complaint states "against the City

defendants for . . . conversion," and plaintiffs allege that City defendants "act[ed] by" Cristo former defendants and "incited[,] encouraged, ordered[,] and directed" them.  (Am. Compl. ¶¶ 544-45.)  Plaintiffs' did not provide any support whatsoever for their claim that City defendants incited, encouraged, ordered, or directed Cristo former defendants to destroy their personal property.  The court is mindful of the fact that, in deciding defendants' motions to dismiss, it reviewed a complaint that consisted of 174 pages and 627 numbered paragraphs.  While the court did allow plaintiffs' conversion claim to survive the motions to dismiss, it erred in doing so.  The bottom line is that there is no evidence before the court to support plaintiffs' claim of conversion against City defendants, and City defendants' argument that neither the allegations in the amended complaint, nor the summary judgment record demonstrate that they took dominion over the personal property has merit.  Accordingly, City defendants are entitled to summary judgment as to plaintiffs' state law conversion claim, and the claim is dismissed.

## V.  **Conclusion**

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that Chazen defendants' motion for summary judgment (Dkt. No. 139) is **GRANTED**; and it is further

**ORDERED** that City defendants' motion for summary judgment (Dkt. No. 140) is **GRANTED**; and it is further

**ORDERED** that any claims remaining against John Doe defendants are **DISMISSED**; and it is further

**ORDERED** that the Amended Complaint is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

December 4, 2019
Albany, New York

Gary L. Sharpe
U.S. District Judge